| **Watson v Intercounty Paving Assoc., LLC** |
|:---:|
| 2024 NY Slip Op 33780(U) |
| October 23, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 157377/2014 |
| Judge: David B. Cohen |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   HON. DAVID B. COHEN _____

_Justice_

PART   58

------------------------------------------------------------------------X

JANE MARTIN WATSON, ROBERT I. WATSON,

Plaintiffs,

- v -

INTERCOUNTY PAVING ASSOCIATES, LLC, ROYAL
GUARD FENCE CO., INC., PONDEROSA FENCE
ENTERPRISES INC., LANDTEK GROUP/PERIMETER
BARRIER SYSTEMS JOINT VENTURE, L.P.,

Defendants.

------------------------------------------------------------------------X

INDEX NO.   157377/2014

MOTION DATE   12/12/2023

MOTION SEQ. NO.   005 006

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 005) 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 192, 193, 194, 195, 197, 198, 199, 208

were read on this motion to/for _____ JUDGMENT - SUMMARY _____ .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 196, 200, 201, 202, 203, 204, 205, 206, 207, 209, 210

were read on this motion to/for _____ JUDGMENT - SUMMARY _____ .

This action involves claims of negligence, negligent supervision, and loss of consortium for personal injuries allegedly caused by a tripping hazard in a parking lot at Jones Beach State Park (Park) in Wantagh, Nassau County, New York.

In motion sequence number five, plaintiff moves for partial summary judgment on liability against defendants Intercounty Paving Associates, LLC (IPA) and Royal Guard Fence Co., Inc. (RGF). IPA opposes and cross-moves for summary judgment on its cause of action against RGF for contractual indemnification. RGF opposes both motions.

In motion sequence number 006, RGF moves for summary dismissal of the complaint, all cross-claims, and IPA's third-party complaint. Plaintiff and IPA oppose.

**157377/2014   WATSON, JANE MARTIN vs. INTERCOUNTY PAVING**
**Motion No.   005 006**

**Page 1 of 11**

## Background

Plaintiff Jane Martin Watson (Watson) and her spouse, plaintiff Robert I. Watson, allege that on June 22, 2013, while visiting the Park, Watson fell and sustained severe personal injuries by tripping over an "uncovered anchor and bolts" protruding from the pavement surface of the Park's Parking Lot No. 5 (*see* amended verified complaint [complaint] [NYSCEF Doc No. 134]).

## Discussion

"The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case. Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers" (*Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985] [citations omitted]). Once the movant has made its showing, "the party opposing the motion must demonstrate by admissible evidence the existence of a factual issue requiring a trial of the action or tender an acceptable excuse for his failure so to do . . .."" (*Fuller v KFG Land I, LLC*, 189 AD3d 666, 669 [1st Dept 2020], *quoting Zuckerman v City of New York*, 49 NY2d 557, 560 [1980]).

In deciding a motion for summary judgment, the court must "[v]iew[] the evidence in a light most favorable" to the nonmovant (*Summer H. v New York City Dept. of Educ.*, 19 NY3d 1030, 1031 [2012] [citation omitted]). Party affidavits and other proof must be examined carefully "because summary judgment is a drastic remedy and should not be granted where there is any doubt as to the existence of a triable issue" (*Rotuba Extruders, Inc. v Ceppos*, 46 NY2d 223, 231 [1978] [citation and internal quotation marks omitted]). Still, "only the existence of a bona fide issue raised by evidentiary facts and not one based on conclusory or irrelevant allegations will suffice to defeat summary judgment" (*id.*).

**157377/2014   WATSON, JANE MARTIN vs. INTERCOUNTY PAVING**
**Motion No.  005 006**

**Page 2 of 11**

2 of 11

**Plaintiffs' motion for partial summary judgment (005)**

**A.     Contentions**

Plaintiffs assert that IPA was hired as general contractor by the State of New York (the State) to construct a bicycle path at the Park, a portion of which traversed part of the existing pavement of Parking Lot No. 5.  IPA hired RGF as its subcontractor, to construct and install timber railing and traffic control signs along the bicycle path.  Plaintiffs allege that, after the construction work was completed, IPA and RGF left two metal bolts protruding two to three inches from the pavement, creating a tripping hazard in an area that had been specifically designated for pedestrian traffic (NYSCEF Doc No. 129).

According to plaintiffs, IPA's General Superintendent testified that he saw RGF personnel install the bolts to secure "string lines" in order to align the posts correctly for the timber rails.  He also stated that it was RGF's responsibility to remove the bolts from the concrete once the rails had been installed and to fill the holes with epoxy (NYSCEF Doc No. 153).

From these alleged facts, plaintiffs argue that IPA and RGF created a hazard that caused Watson to trip and fall, resulting in her serious personal injuries, citing *Espinal v Melville Snow Contrs.*, which provides that a contractor "may be said to have assumed a duty of care – and thus be potentially liable in tort – to third persons. . . where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launche[s] a force or instrument of harm'" (98 NY2d 136, 140 [1st Dept 2002] [*quoting H.R. Moch Co. v Rensselaer Water Co.*, 247 NY 160, 167 [1928]).

IPA asserts that it was hired by the State to install bicycle paths in the area abutting Parking Lot No. 5 (NYSCEF Doc No. 164), and that its engagement for this project was

**157377/2014   WATSON, JANE MARTIN vs. INTERCOUNTY PAVING**                    **Page 3 of 11**
**Motion No.  005 006**

3 of 11

governed by an agreement it entered into with the State on September 27, 2012, by which IPA, as the prime contractor, was responsible for removing existing pavement and installing new pavement for bicycle lanes, and also by which IPA was permitted to hire subcontractors to perform work it could not do itself (NYSCEF Doc No. 149).

IPA contends that it hired RGF as its sole subcontractor to install the guardrails at the project (*id.* ¶¶ 38, 42), which were needed to protect pedestrians and bicyclists on the bicycle path from motor vehicle traffic (*id.* ¶ 40). IPA's agreement with RGF was governed by their subcontract (NYSCEF Doc No. 150 [Subcontract]), which, among others, required RGF to provide insurance coverage for IPA and the State, naming them as additional insureds, and to indemnify IPA and the State, as follows:

> The Subcontractor shall obtain and maintain such insurance as required by Contractor under the Prime Contract, all as more particularly specified in Exhibit 'B' attached hereto, the Subcontractor shall provide Contractor proof of insurance naming Contractor and Owner as additional insureds. The Contractor assumes no responsibility if said limits should be inadequate for the protection of the Subcontractor. Subcontractor is hereby advised to consult with insurance specialists to determine what types of insurance it should carry and whether or not to carry limits higher than as may be required under the Prime Contract. Subcontractor shall, prior to the commencement of the Work, furnish Contractor with certificates of insurance, and endorsements to its insurance policies, containing a provision that coverage afforded shall not be canceled, materially changed, or refused renewal until at least thirty (30) days after notice has been given to the Contractor.
>
> . . .
>
> 25.1    To the fullest extent permitted by law, the Subcontractor shall indemnify and hold harmless the Owner, the Owner's Representative, Contractor, and agents and employees of any of them, from and against any and all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from (1) its performance of the Work or (2) any breach of this agreement by Subcontractor, regardless of whether or not such claim, damages, loss or expense is caused in part by a party indemnified hereunder.

**157377/2014   WATSON, JANE MARTIN vs. INTERCOUNTY PAVING**
**Motion No.  005 006**

**Page 4 of 11**

[* 4]

4 of 11

At his deposition, RGF's former president admitted that he did not know how the guardrail posts were installed or why the bolts on which Watson allegedly tripped had been placed where they were, and that he could not say, one way or the other, whether RGF had placed the bolts in the pavement. He further admitted that RGF's duties under the Subcontract included installing 52 bike racks near the bicycle path, and that RGF had secured these racks by first drilling holes in the cement, inserting over 200 bolts in the holes to anchor the racks, and attaching each rack to two or four of such protruding bolts (NYSCEF 157).

In reply to RGF, plaintiffs observe that IPA's witness testified that the bolts in question were installed by RGF workers as part of the process of installing the wooden posts and rails on the existing paved surfaces of Parking Lot 5 for the bicycle path project (NYSCEF Doc No. 153), and that his testimony has not been controverted by any evidence offered in opposition.

Plaintiffs also take issue with RGF's contention that removal of anchor bolts was expressly excluded from the Subcontract, relying on the testimony of IPA's witness, who explained that the exclusion referred to bolts anchoring posts into large concrete blocks buried underground and which could only be removed by an excavator, and therefore their exclusion from the Subcontract was not related to the anchor bolts in question. Plaintiffs further note that RGF's witness testified that the exclusion applied only to removal of concrete or anchor bolts that existed on site before RGF began its work.

In reply to IPA, Plaintiffs argued for the first time that a contractor like IPA may be held liable for the negligent conduct of its independent contractor under certain exceptions to the general rule against vicarious liability examined in *Kleeman v Rheingold* (81 NY2d 270, 274 [1993] [citations omitted]).

**157377/2014   WATSON, JANE MARTIN vs. INTERCOUNTY PAVING**
**Motion No.  005 006**

Page 5 of 11

[* 5]

5 of 11

## B.    Analysis

To establish a prima facie claim for negligence under New York law, "a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom" (*Solomon v City of New York*, 66 NY2d 1026, 1027 [1985]; *accord J.E. v Beth Israel Hosp.*, 295 AD2d 281, 283 [1st Dept 2002]; *Wayburn v Madison Land Ltd. Partnership*, 282 AD2d 301, 302 [1st Dept 2001]).  "Because a finding of negligence must be based on the breach of a duty, a threshold question in torts cases is whether the alleged tortfeasor owed a duty of care to the injured party" (*Espinal v Melville Snow Contrs.*, 98 NY2d 136, 138 [2002]).  Absent a duty of care to the person injured, a party cannot be held liable in negligence (*Palsgraf v Long Is. R.R. Co.*, 248 NY 339, 341-342 [1928]).

An independent contractor may be held liable in negligence to a plaintiff if any of the three factors are applicable: (1) when the contracting party, in failing to exercise reasonable care in the performance of its duties, launches a force or instrument of harm; (2) when the plaintiff detrimentally relies on the continued performance of the contracting party's duties; and (3) when the contracting party has entirely displaced another party's duty to maintain the premises safely (*Espinal v Melville Snow Contrs., Inc.*, 98 NY2d 136, 140 [2002]).

The factual allegations discussed above implicate RGF's work in the launching of a force or instrument of harm that allegedly caused Watson's accident, and thus plaintiffs' motion for partial summary judgment on liability is granted as against RGF (*see e.g., Camelio v Shady Glen Owners' Corp.*, 219 AD3d 453 [2d Dept 2023] [contractor failed to show that it did not create dangerous condition, where evidence reflected that contractor resurfaced area of crosswalk before accident and that resurfacing caused elevation differential between existing pavement and new asphalt, and plaintiff tripped on raised portion]).

**157377/2014   WATSON, JANE MARTIN vs. INTERCOUNTY PAVING**
**Motion No.  005 006**

Page 6 of 11

6 of 11

[* 6]

However, absent evidence that IPA engaged in any affirmative conduct which created or exacerbated the hazard, plaintiffs' motion against IPA is denied (*see e.g. Brandner v Boricua Coll. Dev. Corp.*, 202 AD3d 616 [1st Dept 2022] [defendant entitled to summary dismissal as it was independent contractor and performed no work to sidewalk in area of plaintiff's fall]; *Miller v Infohighway Communications Corp.*, 115 AD3d 713 [2d Dept 2014] [as defendants subcontracted work to another company and their involvement was limited to receiving updates and inspecting other company's work once completed, they showed that they did not perform work that allegedly caused accident, and thus could not be held liable for creating dangerous condition or otherwise launching force or instrument of harm]; *George v Marshalls of MA, Inc.*, 61 AD3d 925 [2d Dept 2009] [as contractor subcontracted cleaning services to another company, it did not launch a force or instrument of harm]; *Cardozo v Mayflower Ctr., Inc.*, 16 AD3d 536 [2d Dept 2005] [contractor which subcontracted work to another entity did not owe plaintiff duty of care]).

As the court cannot consider arguments first raised in reply (*Windermere Props., LLC v City of New York*,    AD3d   , 2024 NY Slip Op 04842 [1st Dept 2024]), the Court does not address plaintiffs' arguments premised on the vicarious liability rule discussed in *Kleeman v Rheingold*.

**IPA's Cross-Motion Against RGF for Contractual Indemnification**

IPA, citing, *inter alia, Mikelatos v Theofilaktidis* (105 AD3d 822, 823 [2d Dept 2013]), asserts that it is entitled to indemnification from RGF under the terms of the indemnification provision to the Subcontract, as there has been no showing that it was negligent in its performance under the Prime Contract. Even if IPA could be held liable in negligence for plaintiffs' injuries, it argues that it would still be entitled to contractual indemnification for any

**157377/2014   WATSON, JANE MARTIN vs. INTERCOUNTY PAVING**                        **Page 7 of 11**
**Motion No.  005 006**

7 of 11

damages attributable to RGF's tortious conduct, citing, *inter alia, Brooks v Judlau Contr., Inc.* (11 NY3d 204 [2008]). Finally, IPA asserts that, as it is entitled to indemnification, it is also entitled to recovery of defense costs, including attorneys' fees, *citing Holt v Welding Servs., Inc.* (264 AD2d 562 [1st Dept 1999]).

In opposition, RGF argues that IPA should be held liable for its negligence in failing to conduct a careful inspection of the worksite upon completion of the project, which it contends would have led to IPA's discovery of the hazardous condition before that area of the Park was reopened to the public, and that responsibility for removing the bolts was excluded from the scope of RGF's work under the Subcontract. RGF also asserts that the IPA's witness's testimony raises issues of fact relating to his credibility, which undermines IPA's claim for contractual indemnification, and that IPA is not entitled to either defense costs or attorneys' fees.

IPA has met its prima facie burden of establishing its entitlement to summary judgment on its cross-claim for contractual indemnification. The applicable contractual provision states that RGF shall indemnify IPA "from and against any and all claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from (1) its performance of the Work or (2) any breach of this agreement" (NYSCEF 150), thereby expressing "an unmistakable intent that [RGF] indemnify [IPA], regardless of whether either party is at fault or is found liable" (*Gregware v City of New York*, 132 AD3d 51, 64 [1st Dept 2015] [citation omitted]).

Although broad, "the indemnity provision . . . does not run afoul of General Obligations Law § 5-322.1 because it contemplates indemnification to the 'fullest extent of the law,' which does not seek indemnification for [IPA's] own negligence" (*Alvarado v SC 142 West 24 LLC*, 209 AD3d 422, 424 [1st Dept 2022], *citing Brooks*, 11 NY3d at 207 [statute permits "a partially

**157377/2014   WATSON, JANE MARTIN vs. INTERCOUNTY PAVING**
**Motion No. 005 006**

**Page 8 of 11**

[* 8]

negligent general contractor to seek contractual indemnification from its subcontractor so long as the indemnification provision does not purport to indemnify the general contractor for its own negligence"]). Moreover, the provision specifically contemplates indemnity as to attorney fees (*see Kalnit v 141 E. 88th St., LLC*, 210 AD3d 531 [1st Dept 2022] [defendant entitled to indemnity, including attorneys' fees and costs, based on provision in parties' agreement]).

In opposition, RGF offers no admissible evidence and thus raises no triable issues of fact.

**RGF's motion for summary judgment (006)**

RGF seeks summary judgment in its favor, dismissing the complaint, IPA's cross-claims, and IPA's third-party complaint with prejudice. Quoting *Noia v Maselli*, RGF argues that it cannot be held liable for any dangerous or defective condition at the Park because it did not own, occupy, or control the Park or use it for a special purpose (45 AD3d 746, 746 [2d Dept 2007] ["Liability for a dangerous or defective condition on property is generally predicated upon ownership, occupancy, control or special use of the property…"] [internal quotation marks and citation omitted]).

However, plaintiffs' claims against RGF do not depend on whether it was an owner or occupant of the Park, but rather whether it created a dangerous condition, for which, pursuant to *Espinal*, it may be held liable. Thus, these contentions are immaterial.

Next, RGF argues that it did not breach a duty of care under *Espinal* as it did not create a dangerous condition. However, as discussed previously, it offers no supporting evidence, and does not controvert the evidence offered against it. RGF's argument that the exclusion applies to the bolts at issue is also unavailing, for the reasons set forth above.

Moreover, the testimony of the IPA witness, that he personally observed RGF employees installing the bolts at issue, is not controverted by RGF former president's testimony that he

[* 9]

could not confirm or deny that RGF installed the bolts, especially as he admitted that RGF used such bolts to perform the work required in the Subcontract. RGF thus fails to meet its burden, prima facie, of showing that it did launch a force or instrument of harm by its installation of the bolts. RGF's motion for summary dismissal of the complaint against it is therefore denied.

RGF's motion to dismiss IPA's cross-claim for indemnity is denied for the reasons set forth above on IPA's cross-motion.

In support of its motion for dismissal of IPA's cross-claim for breach of the Subcontract's agreement to procure insurance coverage, RGF submits it commercial general liability policy for the period of August 29, 2012 through August 29, 2013, which includes an endorsement numbered "CG 20 37 07 04" and captioned "Additional Insured – Owners, Lessees or Contractors," which states that Section II of the policy's Commercial General Liability Part was amended to include as an additional insured any "Person(s) Or Organization(s): As Required By Written Contract." (NYSCEF Doc No. 190).

RGF argues that as its agreement with IPA required RGF to obtain such insurance and as it procured an insurance policy in accordance therewith, IPA's claim for breach of contract must be dismissed.

In opposition, IPA argues that RGF has not shown whether RGF obtained any other insurance coverage, such as excess or umbrella insurance, and whether such additional coverage named IPA as additional insureds, nor did RGF submit an affidavit attesting that no other insurance exists.

Article 13 of the Subcontract provides that:

[t]he Subcontractor shall obtain and maintain such insurance as required by Contractor under the Prime Contract, all as more particularly specified in Exhibit 'B' attached hereto, [and] the Subcontractor shall provide Contractor proof of insurance naming Contractor and Owner as additional insureds. . . [and] prior to

**157377/2014  WATSON, JANE MARTIN vs. INTERCOUNTY PAVING**
**Motion No.  005 006**

**Page 10 of 11**

10 of 11

the commencement of the Work, furnish Contractor with certificates of insurance.
. .

(NYSCEF Doc No. 150).

As RGF failed to submit a copy of the Subcontract's Exhibit "B", or the certificates of insurance required under Article 13, it does not demonstrate that IPA's claim for breach of the failure to procure insurance must be denied.

**Conclusion**

Accordingly, it is hereby

ORDERED that plaintiffs' motion for summary judgment as to the liability of defendants IPA and RGF (seq. 005) is granted only as to RGF; it is further

ORDERED that defendant IPA's cross-motion for summary judgment is granted to the extent of declaring RGF liable to provide it contractual indemnification for its defense costs, including attorneys' fees; it is further

ORDERED that RGF's motion for summary judgment dismissing plaintiffs' complaint against it and IPA's cross-claim against it for breach of its agreement to procure insurance coverage (seq. 006), is denied; and its motion seeking dismissal of IPA's cross-claim for contractual indemnification is denied as moot; and it is further

ORDERED that the parties shall appear for a settlement/trial scheduling conference on January 29, 2025 at 9:30 am at 71 Thomas Street, Room 305, New York, New York.

20241023153248DCOHENB25C891CD32546S394BBC7356A3E1D09

__10/23/2024__
DATE

_____
DAVID B. COHEN, J.S.C.

| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|
| | | GRANTED | DENIED | X GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |

157377/2014   WATSON, JANE MARTIN vs. INTERCOUNTY PAVING
Motion No.  005 006

Page 11 of 11

11 of 11